## Elliott *v.* Howison.

*Action for Breach of Contract.*

(Decided April 28, 1906.   40 So. Rep. 1018.)

1. *Sales; Contract; Offer and Acceptance.*—Where a seller offered to sell 300 pine piling, 10 inches in diameter at small end, forty feet long, at $4.00 each f. o. b. cars, to be paid for as deliv-

[Elliott v. Howison.]

ered, and the buyer accepted, stating that the piles should be 10 inches in diameter at small end and practically straight, this constituted an executory contract of sale.

2. *Same; Performance.*—The contract is not shown to have been performed so as to compel the buyer to take the piling, until it is shown that the seller offered to fulfill by loading round pine piling forty feet long and ten inches at small end.

3. *Same; Action to Enforce Contract; Defenses.*—Under an executory contract of sale the fact that the articles tendered did not conform to the provisions of the contract is a valid defense to a suit by the seller to enforce the contract.

4. *Same; Rescission; Time; Restoration of Goods.*—Where a buyer seeks to rescind a contract of sale for failure of seller to fulfill his part of the undertaking, he must act within a reasonable time after failure of seller to perform; and if goods have been shipped, which do not conform to the specifications of the contract, after examination, they must be returned or offered for return within a reasonable time.

5. *Same; Breach of Contract; Action for; Plea; Sufficiency of.*—Where the complainant alleges that the buyer agreed to receive a number of pine piling of stated dimensions and pay a specified sum therefor, and that the buyer had refused to pay for any of the piling although a large part of them had been delivered to him and the seller was ready and willing to deliver the rest of them under the contract, a plea which alleges that a certain number of the piling shipped did not conform to the contract, and that the seller pointed out other piling to the buyer's agent, which the seller proposed to ship under the contract, and which did not come up to the contract as to diameter and otherwise, is not demurrable for failing to deny that the seller was ready and willing to deliver the piles in accordance with the contract.

6. *Contracts; Time of Performance.*—Where the contract does not specify the time within which it is to be performed, time is ordinarily not of the essence of the contract, unless it follows naturally from the circumstances of the case, and the party on which rests the duty of performance must have a reasonable time within which to discharge his obligations.

7. *Sales; Action for Breach; Defenses; Pleas; Sufficiency of.*—A plea to an action for breach of contract which alleges the seller agreed to ship a certain number of piling of a certain size and condition; that the seller shipped a part of the piling, which did not conform to the terms of the contract; that the buyer refused to accept them and notified the seller of his

[Elliott v. Howison.]

refusal; that subsequently the buyer's agent visited the seller, who showed said agent a large number of piling which he proposed to ship under the contract; that all of said piling so exhibited did not conform to the contract; that the buyer, on being informed by his agent of this, terminated the contract, and so notified the seller, and went into the market and purchased other piling, is demurrable for failure to aver that the seller was allowed a reasonable time after notice of the buyer's purpose to rescind, within which to perform the contract.

8. *Contracts; Rescission; Notice.*—Where a contract is rescinded without mutual consent, notice of the rescission must be brought to the other party and a reasonable time allowed, after such notice, for compliance.

9. *Sales; Actions for Breach; Pleas; Sufficiency of.*—A plea to an action for breach of an agreement to buy a certain number of piles, which alleges that the seller agreed to deliver the pilings within ten days from the making of the contract, that a part of the piling delivered did not come up to the contract, and that the other piling delivered did not come up to the contract, and that the other piling that the seller proposed to deliver under the contract did not comply with the contract, and that the buyer notified the seller of his intention to rescind the contract, is not subject to demurrer that the seller was not given a reasonable time within which to perform his undertaking after notice of rescission. Nor are such pleas subject to demurrer on the ground that they confess that the buyer is indebted to the seller for goods sold and no facts are alleged in avoidance.

10. *Contracts; Written Contracts; Modification; Validity.*—The terms of a written executory contract may be modified by a subsequent agreement between the parties, and is valid as founded upon the mutual assent of the parties, without other consideration.

11. *Sales; Delivery; Acceptance; Inspection.*—Where goods of a particular description are ordered to be sent by carrier, the buyer may receive and inspect them to see if according to contract, without making same an acceptance, so long as the buyer can consistently object to them as failing to come up to contract specifications.

12. *Same; Rescission; Time.*—A buyer will be considered as having accepted goods shipped him unless, within a reasonable time, he notifies the seller that the goods are not according to contract and of his refusal to receive them.

13. *Same; Acceptance; Jury Question.*—Whether, in this case, the

[Elliott v. Howison.]

buyer accepted the goods shipped, is a question for the jury, under the evidence.

14. *Same; Contract; Construction.*—Where a seller agrees to deliver piling f. o. b. cars it is an implied agreement that the seller will furnish necessary cars.

15. *Contract; Construction; Question for Court.*—What does or does not constitute a material part of a contract is a question of law to be determined by the court.

16. *Trial; Instructions.*—Instructions hypothesizing facts not in evidence or that invade the promise of the jury, or that ignore parts of the evidence, are properly refused.

17. *Sales; Contracts; Modification; Evidence.*—Where the contract of sale was silent as to the time of performance, parol evidence that the seller stipulated to deliver the goods within a specified time was admissible.

18. *Trial; Specific Objections to Evidence; Waiver of other Objections.*—Where a party makes specific objections to the admission of evidence, he waives all other objections thereto.

APPEAL from Mobile Circuit Court.

Heard before HON. W. S. ANDERSON.

Action by Allen P. Howison against J. D. Elliott.

The complaint in this cause was in the following language: "(1) Plaintiff claims of the defendant $1,200 due from him by account on the 1st day of September, 1900. (2) Plaintiff claims of the defendant the further sum of $1,200 for merchandise, goods, and chattels sold by plaintiff to defendant on, to-wit, the 1st day of September, 1900, which sums of money, with interest thereon, are still due and unpaid. (3) Plaintiff claims of the defendant the further sum of $1,200 for the breach of an agreement entered into by him on, to-wit, the 13th day of August, 1900, by which he promised to receive 300 round pine pilings from the plaintiff, and to pay the plaintiff therefor $4 each; and the plaintiff avers that the defendant has breached said contract, in that he has refused to pay for any of said piling, although a large part thereof was delivered to him, and although the plaintiff was ready and willing to comply with his portion of said contract. (4) The plaintiff claims of the defendant the further sum of $1,200, for this: that on the 13th day of August, 1900, the plaintiff and defendant did enter into

[Elliott v. Howison.]

a contract by which the defendant did purchase and agree to receive from the plaintiff 300 round pine piling, each 10 inches in diameter at the small end, from said plaintiff, and did agree to pay the plaintiff therefor the sum of $4 each; and the plaintiff avers that he did cut and store near Randolph, in Bibb county, Ala., the said 300 round pine piling, and that the same was so cut and stored and ready for delivery on the 1st day of September, 1900; and the plaintiff avers that he was ready and willing at all times from the 1st day of September, 1900, to carry out and perform his part of said contract, but the plaintiff avers that the said defendant has breached his contract, in this: that he has wholly failed and refused to accept said piling and receive the same, though the same has been since the 1st day of September, 1900, and now are cut and ready for delivery, and that plaintiff is and was willing and ready to comply with his part of said contract. Wherefore this suit. (5) And the plaintiff claims of the defendant the further sum of $1,200, for this: that the said plaintiff and defendant did enter into a contract on the 13th day of August which is in words and figures as follows, to-wit: 'Randolph, Alabama, Aug. 13, 1900. Mr. J. D. Elliot, Hickory, N. C.— Dear Sir: I will furnish you three hundred round pine piling ten inches at small end and forty feet long, at $4 each, f. o. b. cars on Southern Railway Co.'s tracks, and you pay me for them as they are delivered. Yours very truly, Allen P. Howison, Brand.' 'Randolph, Ala. Aug. 13, 1900. Mr. Allen P. Howison, Randolph, Ala.—Dear Sir: I accept your proposition of this date to furnish the three hundred piling f. o. b. cars on Southern Railway track at $4 each. The above piling to be ten inches in diameter at small end, and to be practically straight, to be paid for as deliveries are made. Yours truly, J. D. Elliott. H. T. Elliott. Ship to Southern Railway Co., care J. D. Elliott, Mobile, Ala.' And plaintiff avers that he cut and had the said 300 round pine piling, each 10 inches in diameter at the small end, at or near Randolph, in the county of Bibb, ready for shipment f. o. b. cars of the Southern Railway; that the defendant did wholly fail

and refuse to receive the said 300 round pine piling, each 10 inches in diameter, and did instruct the said plaintiff not to ship the same, to the damage of the said plaintiff in the sum of $1,200."

The defendant interposed the following pleas: (1) The general issue. (2) "And for further special plea to each count of the complaint, pleaded separately to each, defendant says that on the 13th day of August, 1900, he entered into a contract with plaintiff by which plaintiff agreed to furnish and defendant agreed to take 300 round pine piling, said piling to be 40 feet long, 10 inches in diameter at the small end, and to be practically stright. Thereafter on, to-wit, August 25, 1900, plaintiff shipped from Randolph, Ala., to defendant, at Mobile, Ala., 32 of said 300 round pine piling under said contract, which were all of the piling shipped under said contract, but upon examination at Mobile defendant found said 32 piling to be less than 10 inches in diameter at the small end, to-wit, between 7 inches and 9 1-2 inches at the small end, and defendant refused to accept them, and notified plaintiff that the piling was subject to his order. On, to-wit, the 28th day of August, 1900, defendant's agent or superintendent visited Randolph, Ala., and the plaintiff then and there exhibited to defendant's said agent or superintendent the large quantity of, to-wit, 100 piling, which plaintiff stated he had cut and which he intended to ship to defendant under said contract. Defendant avers that all of said 100 piling, except about 5 or 6, were less than 10 inches in diameter at the small end. Defendant further avers that, being in urgent need for said 300 round pine piling, as plaintiff well knew, defendant on the 1st day of September, 1901, upon being informed by defendant's agent or superintendent of the size of said 100 pine piling which plaintiff intended to ship to defendant as aforesaid, he (defendant) terminated and rescinded said contract and so notified plaintiff, and thereafter purchased said 300 round pilings from another party. Wherefore defendant says he is not liable in this action."

The plaintiff demurred to the second plea, as pleaded to the first count, because it is not alleged in said plea

that the matters therein alleged have any reference to the count sued on, and it is confessed by said plea that there is $1,200 due from defendant to plaintiff, and no fact in avoidance thereof is set up; and because it does not appear from said plea that by the terms of the contract plaintiff was obligated to deliver said piling by the 1st day of September, 1900, or show any breach of said contract which justified defendant to rescind same. And to the second plea as amended to the second count of the complaint, he demurs, because by said plea it is confessed that defendant is indebted to plaintiff for merchandise, goods, and chattels, and no fact in avoidance thereof is set up, and because it is not alleged that the goods, wares, and merchandise sued for consist of the piling mentioned in said plea; and to the plea as pleaded to the third, fourth, and fifth counts of the complaint he demurs, because it is not alleged in said plea that by the terms of the contract the plaintiff agreed to furnish the defendant the piling by September 1, 1900, and because said plea does not allege any breach of contract by the plaintiff, in that it does not allege any failure or refusal on part of the plaintiff to deliver the piling contracted for within a reasonable time, and because it appears from said count that the plaintiff was ready and willing to deliver the 300 piling in accordance with the said contract, and this fact is not denied in said plea, and it is immaterial whether plaintiff delivered or was prepared to deliver other piling in addition thereto not in accordance with the contract. And to the second plea as pleaded to the third count of the complaint he demurs, because, being in confession and avoidance, the plaintiff admits thereby the allegation of said third count that a large portion of the 300 piling contracted for had been delivered to the defendant, and plaintiff was willing and ready to comply with its portion of the contract.

These demurrers were sustained, and defendant filed the following additional plea: "(3) And for further special plea to each count of the complaint, pleaded separately to each, defendant says that the respective amount sued for in the first, second, third, fourth and

fifth counts of the complaint are based solely upon a contract entered into by and between plaintiff and defendant on the 13th day of August, 1900, by which plaintiff agreed to furnish and defendant agreed to take 300 round pine piling, said pilings to be 40 feet long and 10 inches in diameter at small end, and to be practically straight. Thereafter on the 25th day of August, 1900, plaintiff shipped from Randolph, Ala., to defendant at Mobile, 32 of said 300 piling under said contract, which were all of the piling shipped under said contract, but upon examination at Mobile defendant found 32 piling to be less than 10 inches in diameter at the small end, to-wit, between 7 inches and 9 1-2 inches at the small end, and defendant refused to accept them, and notified plaintiff that the piling was subject to his order. On the 28th day of August, 1900, defendant's agent or superintendent visited Randolph, Ala., and plaintiff then and there exhibited to defendant's said agent a large quantity of piling, to-wit, 100 piling, which plaintiff stated he had cut and which he would ship to defendant under said contract. Defendant avers that all of said 100 piling were less than 10 inches in diameter at the small end, except about 5 or 6. Defendant further avers that, being in urgent need for said 300 round pine piling to complete a contract which he had with the Southern Railway Company, which plaintiff well knew, defendant, on the 1st day of September, 1900, upon being informed by defendant's said agent as aforesaid of the size of said 100 piling which plaintiff intended to ship the defendant, defendant terminated and rescinded said contract and so notified plaintiff, and afterwards purchased said 300 piling from another party, wherefore he says he is not liable. (4) And for further special plea to each count of the complaint, pleaded separately to each, defendant says that the respective amount sued for in the first, second, third, fourth, and fifth counts of the complaint was based solely upon a contract entered into between plaintiff and defendant on August 13, 1900, by which plaintiff agreed to furnish and defendant agreed to take 300 round pine piling, to be 40 feet long and 10 inches in diameter at the

[Elliott v. Howison.]

small end, and to be practically straight, which plaintiff agreed to deliver within 10 days from the making of said contract. Thereafter, on the 25th of August, plaintiff shipped from Randolph, Ala., to the defendant at Mobile, Ala., 32 of said 300 piling, which were all the piling shipped under said contract. * * *" The balance of this plea is exactly like plea 3 in all its remaning allegations.

The plaintiff demurred to these pleas as follows: "(1) Plaintiff demurs separately to each of said pleas, as pleaded to the second count of the complaint, because it is alleged in the said count and confessed by said plea that the defendant is indebted to the plaintiff for merchandise, goods, and chattels sold by plaintiff to defendant, and no facts are alleged in avoidance thereof. (2) And the plaintiff demurs to each of said pleas, pleaded to each count of the complaint, because it does not appear from the said plea that the plaintiff failed or refused to deliver to the defendant the piling provided for by said contract within a reasonable time from the date thereof, or has promised or contracted to deliver the same within any time specified in the contract. (3) Plaintiff demurs separately and severally to each of said pleas as pleaded to the third count because it appears in said count that the plaintiff was ready and willing to deliver the said piling in accordance with the contract, and this fact is not denied in said plea, and it is immaterial whether plaintiff deliver or was prepared to deliver other piling in addition thereto which did not accord with the terms of said contract. (4) And the plaintiff demurs separately and severally to each of said pleas as pleaded to the third count of the complaint because, being in confession and avoidance, the plaintiff admits thereby the allegation of the third count of the complaint, and a large portion of the 300 piling contracted for had been delivered to the defendant, and that the plaintiff was ready and willing to comply with its portion of said contract." These demurrers were sustained, and issue was joined upon the general issue.

The evidence for the plaintiff tended to show that he shipped four car loads of piling, some of which was un-

[Elliott v. Howison.]

der the specifications in measurement, and some of which up to the specifications and over. His evidence also tended to show that he had cut and ready for shipment the full number of piling called for by the contract. The evidence showed with reference to the first car load shipped that it was thrown off the cars near the place where it was needed, but just what became of it is not shown. The following telegrams in reference thereto were identified and introduced in evidence:

"8-22-1900.  To J. D. Elliott, Mobile, Ala.  One car and bill lading to you to-day.  A. P. Howison."

Reply: "Mobile, Ala., 8-25-1900.  Allen P. Howison, Randolph, Ala.—Dear Sir: The car piling received this a. m.  Does not come up to specifications in size.  30 run from 7 to 9 inches.  There is not a single one that measures 10 inches at small end, as specified.  Please look out for this on remainder of bill.  J. D. Elliott."

"Mobile, Ala., 8-27-1900.  A. P. Howison, City: Piling condemned by railroad people.  Stop shipment until I come.  J. D. Elliott."

"Mobile, Ala., 8-29-1900.  A. P. Howison, City: Piling condemned.  Don't ship any more until they are inspected.  J. D. Elliott."

"8-29-1900.  J. D. Elliott, Mobile, Ala.: Unless you send inspector quickly, will load piles as soon as I get cars.  A P. Howison."

"8-31-1900.  J. D. Elliott, Mobile, Ala.: Two cars to load piling, will load at once, no inspector, answer.  A. P. Howison."

"9-14-1900.  J. D. Elliott, Mobile, Ala.: I have specifications.  I have the poles.  Will ship and stand by it. A. P. Howison."

"Mobile, Ala., 9-15-1900.  Allen P. Howison: Do not ship poles.  I decline to accept.  See my letter Sep. 1st. J. D. Elliott."

"Aug. 30, 1900.  Allen P. Howison, Esq., Randolph, Ala.—Dear Sir: I am informed through my superintendent that two-thirds of the first car load of piling will average less than seven inches at the small end. I am very sorry indeed that this is the case, as we are needing these

piles very badly, and it will be impossible for us to use them less than ten inches at the small end. We can use them larger, but not smaller. You will find that a mercantile pile, such piles as are furnished by men handling piles, are two-thirds heart. I am satisfied that these piles not being the proper size is no fault of yours, but think it advisable for you to have the piles inspected before they are loaded on cars, as I feel confident that you do not want me to pay for a pile that I cannot use. I will be in Mobile Saturday, and will be glad for you to drop me a line. How many have you shipped? If I can assist you in securing cars, I will be glad to do so while I am in Mobile. If you have not already done so, please ship the thirty odd thousand feet of lumber at once. I am needing it. Yours truly, J. D. Elliott."

"Mobile, Ala., Sept. 1, 1901. Allen P. Howison, Randolph, Ala.—Dear Sir: The agreement made with you on Aug. 13 for three hundred pine piles to be cut from long leaf live pine, forty feet long and ten inches at the small end, and to be delivered inside of two weeks is forfeited on your part. First. You only shipped one car, and it does not contain a single pile that will measure ten inches at the small end. My man, who was at your place Monday the 27th or 28th, says he examined one lot of piles—containing 53 about—and that he could not find more than 5 or 6 that would measure ten inches at the small end, and that they were so crooked that they could not be used. Owing to these facts, I am forced to cancel this order with you and will at once proceed to get the piles elsewhere. This car of 33 piles is here subject to your order. Yours truly, J. D. Elliott."

"Mr. J. D. Elliott, Mobile, Ala.—Dear Sir: Your letter received and contents noted. Now, Mr. Elliott, you need not try and get out of this contract in this way. Your man misrepresented the thing from beginning to end if he said what you say he said. I have shipped you today another car load of poles, and you can condemn what is not ten inches. The balance you must take, and I shall continue to ship them until the contract is completed. Please find enclosed copy of specifications and

an agreement as I should ship them. And I told your man as well as I told you I would ship them as fast as I could get cars. This I have done, and will continue to do. Now if these poles will not do and you will come up here, I will make any honest and reasonable settlement with you. Otherwise this thing will be settled in court. Respectfully, Allen P. Howison."

It was shown that, when the first car load of piles reached its destination, it was thrown off by the superintendent of Elliott, but that they were not used after they were unloaded, and that they were not tendered to the railroad company, nor were they used for any other purpose. It was also shown that the superintendent who received the first car load never received any more poles. J. D. Elliott testified that he reached Mobile about August 31, 1900. He testified that only one car load of piling ever came to Mobile so far as he knew, and those piling were not used at all. He testified, further, that he received only one bill of lading. It was attempted to be shown by the defendant, Elliott, that the railroads required him to unload the poles so as to free the cars, and that after they were unloaded they were moved 30 or 40 yards to make room for some lumber, but the court would not permit this evidence to go to the jury.

At the conclusion of the testimony, the court gave the affirmative charge for the plaintiff.

The defendant requested the court in writing to give each of these charges. Charge 2: The court charges the jury that if they believe from the evidence that the plaintiff breached the contract in a material part before the 1st day of September, 1900, and that on said 1st day of September, 1900, the defendant notified the plaintiff that because of plaintiff's alleged breach he, the defendant, terminated the contract, then they must find for the defendant." Charge 3: "The court charges the jury that if they believe from the evidence that the plaintiff breached the contract in a material part before the 1st day of September, 1900, and that on said 1st day of September, 1900, the defendant notified the plaintiff that he terminated the contract because of said alleged

breach, then they must find a verdict for the defendant, unless they further find from the evidence that the defendant accepted some of the piling which was shipped by the plaintiff; and if they further find from the evidence that the defendant did so accept some of the piling, they (the jury) can only find a verdict for the contract price of the piling so accepted by the defendant." Charge 4: "The court charges the jury that if they believe from the evidence that the plaintiff breached the contract in a material part before the 1st day of September, 1900, and that on said 1st day of September, 1900, the defendant notified the plaintiff that he terminated the contract because of said alleged breach, then they must find a verdict for the defendant, unless they further find from the evidence that the defendant accepted some of the piling which was shipped by the plaintiff." Charge 5: "The court charges the jury that if they believe from the evidence that the plaintiff contracted to furnish the piling within 10 days from the 13th day of August, 1900, and that the plaintiff failed to so furnish them within said time, and if they further find from the evidence that the defendant notified the plaintiff on the 1st day of September, 1900, that he terminated the contract because of such failure, then the jury must find a verdict for the defendant." Charge 6: "The court charges the jury that if they believe from the evidence that the plaintiff contracted to furnish the piling within 10 days from the 13th day of August, 1900, and that the plaintiff failed to so furnish them within said time, and if they further find from the evidence that the defendant notified the plaintiff on the 1st day of September, 1900, that he terminated the contract because of such failure, then the jury must find a verdict for the defendant, unless they further find from the evidence that the defendant accepted or used a portion of the piling shipped to him by the plaintiff." Charge 7: "The court charges the jury that the unloading of the first lot of piling by the defendant did not alone amount to an acceptance of the car load of piling by the defendant." Charge 8: "The court charges the jury that if they believe from the evi-

[Elliott v. Howison.]

dence that there was no time specified within which plaintiff was to deliver the piles under the contract of August 13, 1900, then the court charges the jury that it became the duty of the plaintiff to deliver the piling within a reasonable time after the said 13th day of August, 1900; and the court further charges the jury that this reasonable time in which plaintiff was to deliver the piling cannot be extended because of the time lost by plaintiff in cutting the 8-inch piling, and if the jury find from the evidence that the plaintiff did not deliver the piling within a reasonable time, then they must find a verdict for the defendant." Charge 11: "The court charges the jury that it was the duty of the plaintiff to furnish or procure the cars upon which to load said piles."

BESTOR, GRAY & BESTOR, for appellant.—The court erred in sustaining demurrers to the special pleas 3 and 4.—*Pope v. Porter*, 102 N. Y. 366; *Norrington v. Wright*, 115 U. S. 188; *King Mills v. Slater*, 34 Am. Rep. 602; *Penn v. Smith*, 98 Ala. 560. Counsel discuss the other assignments of error.

GREGORY L. and H. T. SMITH, for appellee.—The failure to rescind the contract promptly would of itself have been a waiver of the breach, and the demurrers were properly sustained to the pleas.—*Hodges v. Tufts*, 115 Ala. 375. Wholly irrespective of all other questions, the defendant is liable for other piling which was shipped and which complied with specifications.—*Capehart v. Furnham*, 103 Ala. 674; *Bilgreen v. The State*, 71 Ala. 368; 24 A. & En. Ency of Law, 1971. Plaintiff would have been entitled to the affirmative charge even if no piling had been actually delivered.—*Chicago Lbr. Co. v. Comstock*, 71 Fed. 477; *Bellington v. Sweeney*, 77 Wis. 55; *Hodges v. Tufts, supra*. The court did not err in reference to its ruling on the questions to plaintiff as to his answers to particular portions of the interrogatories propounded to him.—*Southern Ry. Co. v. Hubbard*, 116 Ala. 388. The court did not err in refusing the special

charges requested by the defendant.—4 Am. & Eng. Ency. of Law, 957; *Capehart v. Furnum, supra; Bilgreen v. The State supra.* The court did not err in refusing the 6th charge.—*Chicago Lbr. v. Comstock, supra.* The 11th charge was properly refused on the authorities supra.

DENSON, J.—Action of assumpsit by Allen P. Howison against J. D. Elliott. There are five counts in the complaint. The first is based upon an account due on the 1st of September, 1900; the second is the common count for merchandise, goods, and chattels alleged as having been sold by the plaintiff to the defendant on, to-wit, the 1st day of September, 1900; while the third, fourth, and fifth counts each claim damages for the breach of a sale contract alleged to have been entered into on the 13th day of August, 1900, between plaintiff and defendant. In the fifth count it appears that the contract was in writing and in the form of a proposition and acceptance. The contract is set out in haec verba in this count, and is as follows, to-wit:

"Randolph, Ala., Aug. 13th, 1900.

"Mr. J. D. Elliott, Hickory, N. C.—Dear Sir: I will furnish you three hundred (300) round pine pilings, 10 inches at small end and forty (40) feet long, at four dollars ($4.00) each f. o. b. cars on Sou. Ry. Co.'s tracks, and you to pay me for them as delivered.

"Yours truly, Allen P. Howison, Brand."

"Randolph, Ala., Aug. 13th, 1900.

"Mr. Allen P. Howison, Randolph, Ala.—Dear Sir: I accept your proposition of this date to furnish the three hundred pilings f. o. b. cars on Sou. Ry. track at four dollars ($4.00) each. The above pilings to be ten (10) inches in diameter at small end and to be practically straight. To be paid for as delivery is made.. Yours truly, J. D. Elliott. H. T. Elliott. Ship to Southern Railway Co., care J. D. Elliott, Mobile, Ala."

There can be no doubt that the proposition and acceptance constituted a valid executory contract of sale between the parties.—*Berry v. Nall & Duxberry,* 54 Ala.

[Elliott v. Howison.]

446. Mr. Benjamin says, in his work on Sales: "When the vendor sells an article by a particular description, it is a condition precedent to his right of action that the thing which he offers to deliver, or has delivered should answer the description."—Benjamin on Sales (6th Ed.) § 600. In the case at bar the description was made a part of the contract. It is of the very essence of the undertaking, and at least imports a warranty that the piles which the seller would deliver under the contract should comply with the description. "Otherwise the buyer could contract for one thing and the seller deliver another and different thing." So the description was essential to the identity of the things sold, and before the buyer could be compelled to take piles offered in fulfillment of the contract it would have to be shown that they conformed to the description in the contract.—*Burnett v. Stanton & Pollard*, 2 Ala. 182; *Davis v. Adams*, 18 Ala. 264; *Berry v. Nall & Duxberry*, 54 Ala. 446; *Gachet v. Burch*, 72 Ala. 288; *Nesbitt v. McGehee*, 26 Ala. 748; *Penn. v. Smith*, 98 Ala. 560, 12 South. 818; *Frith v. Hollan*, 133 Ala. 583, 32 South. 494, 91 Am. St. Rep. 54; *Morse v. Moore* (Me.) 22 Atl. 362, 13 L. R. A. 224, 23 Am. St. 783; *Pope v. Allis* 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 393; *Wolcott v. Mount*, 36 N. J. Law, 262, 13 Am. Rep. 438; *White v. Miller*, 71 N. Y. 129, 27 Am. Rep. 13; Benjamin on Sales (6th Ed.) §§ 600, 645, 888. "It is a well-settled rule of law that when a contract is dependent—that is, when one agrees to sell and deliver and the other to pay on delivery—in order to entitle either party to sue for a breach, he must show that he was able and ready to perform his part of the agreement, or that he had performed."—*Davis v. Adams*, 18 Ala. 265; *Nesbitt v. McGehee*, 26 Ala. 748; *Berry v. Nall & Duxberry*, 54 Ala. 446; *Kirkland v. Oates*, 25 Ala. 465; *Drake v. Goree*, 22 Ala. 409; *O'Neal v. Reynolds*, 42 Ala. 197; *McGehee v. Hill*, 4 Port. 170, 29 Am. Dec. 277; *Allen v. Green*, 19 Ala. 35; *McFadden v. Henderson*, 128 Ala. 221, 29 South. 640; *Aarnes v. Windham*, 137 Ala. 513, 34 South. 816; Porter v. Rose, 12 Johns (N. Y.) 209, 7 Am. Dec. 306; 9 Cyc. p. 643, (III) note 60. The exigencies

of the case do not require that we should distinguish between warranty and conditions precedent. "That there is a warranty, or a condition precedent amounting to a warranty, in the contract, there can be no doubt. It is immaterial, for the present purposes, whether it be regarded as an express warrant or an express condition implying warranty, as the effect must be the same and no essential difference of remedy follows from it."— *Morse v. Moore, supra.*

The question of importance here is, are the third and fourth pleas well pleaded as pleas of rescission with respect to the specified grounds of the demurrer leveled against them? In executory contracts of sale, "when there is a warranty that has been broken, or when the article tendered in performance of the contract does not conform to the stipulation, either of these furnishes ground of defense to any suit by the seller brought to enforce the contract."—*Eagan Co. v. Johnson,* 82 Ala. 237, 2 South. 302; *Hodge & Williams v. Tuft,* 115 Ala. 366, 22 South. 422; Benjamin on Sales (6th Ed.) § 888; 3 Parsons on Contracts (7th Ed.) bottom of page 222. Generally where one fails to perform his part of the contract, or does an act which shows conclusively that he did not intend to perform his undertaking, the law would authorize the other party to put an end to the contract.—2 Parsons on Contracts (7th Ed.) p. 678; *Drake v. Goree,* 22 Ala., on page 415. But to effect rescission the party seeking the advantage of it must act with promptness and within a reasonable time. In this respect, if goods have been shipped to him, which, on examination, do not conform to the stipulation, he must return or offer to return them. "An offer to return the chattel in a reasonable time, on the breach of warranty, is equivalent in its effect upon the remedy to an offer accepted by the seller, and the contract is rescinded."— *Burnett v. Stanton & Pollard,* 2 Ala. 182; *Sheffield Land Co. v. Neill,* 87 Ala. 158, 6 South. 1; *Carmelich v. Mims,* 88 Ala. 335, 6 South. 913; 3 Parsons on Contracts (7th Ed.) marg. p. 208.

While it is made to appear by the pleas that the de-

fendant did not accept or appropriate the 32 piles shipped, it is obvious from the facts averred in the pleas that the defendant did not, if he could have done so, rely solely upon the failure of the piles shipped to conform to the description in the contract as the ground for rescission, but upon the further facts averred in the pleas with respect to the deficiency of the piles pointed out to his agent on the 28th of August. The plaintiff pointed out 100 piles to defendant's agent, which the plea avers, with the exception of 5 or 6, were less than 10 inches in diameter at the small end, and which the plaintiff said he had cut and would ship under said contract. The pleas further show that the defendant was in urgent need of piles contracted for to complete a contract he had with the Southern Railway Company, which fact the pleas aver the plaintiff well knew, and on being informed by his agent of the size of the piles, which plaintiff said he would ship, the defendant elected on the 1st of September, to rescind the contract, and so notified plaintiff, and purchased 300 piles from another party. The third ground of the demurrer is addressed to the pleas as an answer to the third count of the complaint. The substance of the demurrer is that it appears from the "complaint" that the plaintiff was ready and willing to deliver the said piles in accordance with said contract, and this fact is not denied in the pleas, and it is immaterial whether he delivered, or was prepared to deliver, other piles in addition thereto, and which did not accord with said contract, and this fact is not denied in the pleas, and it is immaterial whether he delivered, or was prepared to deliver, other piles in addition thereto, and which did not accord with said contract. The demurrer takes no notice of the averment in the pleas that the plaintiff had cut and would ship the 100 piles under the contract. The plain meaning of this is that the plaintiff would ship the piles in performance of the contract. And the statement in the demurrer that "it is immaterial whether he delivered, or was prepared to deliver, other piles in addition thereto, and which did not accord with said contract, or not," we think, is not re-

ferable to anything on the face of the pleas, and is not aided by the averments of the third count of the complaint. It does not appear in the pleas, nor is it averred in the third count of the complaint, that the plaintiff intended that the 100 piles pointed out would be delivered in addition to piles of contract description sufficient to complete the contract. And it is worthy of notice in this connection that the third count does not attempt to describe the piles, and under its averment a tender of round piles would have been prima facie sufficient. Plaintiff had already shipped 32 piles that did not conform to the description in the contract, as described in the pleas, and had been notified of their nonacceptance— of their rejection. Yet, as the plea discloses, in the face of that non-compliance with the contract, he pointed out to defendant's agent the 100 piles under contract size, accompanied by the statement that he had cut and would ship them under the contract. The contract was an executory one. Up to this time, looking to the pleas, no part of it had been performed. We think the facts pleaded authorized the defendant to draw the conclusion, and act upon it, that the defendant did not intend to perform his undertaking. At least, the pleas were not subject to the third ground of the demurrer.—*Drake v. Goree*, 22 Ala. 409; *Bonham v. State*, 65 Ala. 456; *McFadden v. Henderson*, 128 Ala. 221, 29 South. 640; *Hieronymous Bros. v. Bienville W. S. Co.*, 131 Ala. 448, 31 South. 31.

The second ground of the demurrer is addressed to the pleas as answers to each count of the complaint. It is in this language: "And the plaintiff demurs to each of said pleas, pleaded to each count of the complaint, because it does not appear from the said plea that the plaintiff failed or refused to deliver to the defendant the piling provided for by the contract within a reasonable time from the date thereof, or has promised or contracted to deliver the same within any time specified in the contract." Where a contract is silent as to the time within which its conditions or stipulations are to be performed, time is not ordinarily deemed to go to the es-

[Elliott v. Howison.]

sence of the contract, unless it naturally follows from the circumstances of the case. And the party upon whom the duty of performance rests must be allowed a reasonable time within which to discharge his obligations under the contract.—*McFadden v. Henderson*, 128 Ala. 221, 29 South. 640, and authorities there cited. With respect of the third plea, we do not think the facts alleged therein are sufficient to show that time was of the essence of the contract. And, as was said in *McFadden v. Henderson, supra,* quoting from the case of *Monroe v. Reynolds*, 47 Barb. (N. Y.) 579: "It is held that, in all cases where time is not necessarily of the essence of the contract, the seller, if he wishes to have the contract either performed or abandoned, must go further, and by some demand, offer on his part, or notice, put the purchaser to a refusal to perform, before he can treat the contract as having been rescinded by the purchaser. Mere neglect to perform by the day generally is not sufficient." The same rule is applicable to the buyer. Further, it was said in the *McFadden Case,* quoting from *Higby v. Whittaker,* 8 Ohio, 201, which had reference to the rescission of a sale of land: "The law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and then give a reasonable time to comply; but it requires eagerness, promptitude, ability, and disposition to perform by him who would resist the rescission of his contract." It seems to be the rule of our court, then, that where the rescission is not by mutual consent, and the opposite party has not repudiated the contract, to effect rescission, notice of the rescission must be brought home to the opposite party and reasonable time must be given him after the notice to comply. So, as far as the third plea is concerned, we are of opinion that it was subject to the second ground of the demurrer, as it cannot be said that it appears from its averments that a reasonable time after the notice given to plaintiff of defendant's purpose to rescind was allowed to the plaintiff in which to perform his undertaking. —*Carmelich v. Mims,* 88 Ala. 335, 6 South. 913.

[Elliott v. Howison.]

With respect to the fourth plea, it is there alleged that the plaintiff agreed to deliver the piling within 10 days from the making of said contract: This, taken in connection with the other averments in the plea, exempted it from the second ground of the demurrer. We have not overlooked the fact that the contract is fully set out in the fifth count of the complaint; that it is in writing and contains no specification of time within which the piles were to be delivered or in which the contract was to be performed by the plaintiff. This question, however, is not presented by the demurrer. Moreover, the written executory contract may have been modified or altered by the subsequent written or parol agreement between the parties founded upon no other consideration than the mutual assent of the parties.—*Robinson v. Bullock*, 66 Ala. 548.

Other points have been made in the argument with respect to the insufficiency of the pleas, but they have no support in the grounds of demurrer assigned, and we are not authorized to consider defects not presented by the demurrer. The pleas make clear the fact that the only cause of action the plaintiff has against the defendant is founded on the contract mentioned in the pleas. It cannot be said that the pleas do not deny liability, or that they do not aver a breach of the contract on the part of the plaintiff. They expressly aver facts which show there was no delivery of any of the piles contracted for. Hence it cannot be said that they confess the matters alleged in either the second or third counts of the complaint. Upon these considerations it must be held that the first and fourth grounds of the demurrer were not well assigned. The demurrer to the fourth plea should have been overruled.

While the delivery to a common carrier under contracts of sale like the one here involved is deemed prima facie a delivery to the consignee, and the carrier thus becomes, impliedly, the agent of the consignee to receive and transport the goods at his risk, yet, if goods of a particular description are ordered to be sent by a carrier, the buyer may receive them to see whether the goods

[Elliott v. Howison.]

answer his order or not, and this would be no accept-
ance of the goods as long as the buyer can consistently
object to the goods as not answering the order. "It fol-
lows from this that a receipt of goods by a carrier,
though a sufficient delivery to the purchaser, is not an
acceptance by him, so as to bind the contract; for the
carrier, if he be an agent to receive, is clearly not one
to accept the goods.—Benjamin on Sales (6th Ed.) §§
140, 160, 703; *Caulkins v. Hellman*, 47 N. Y. 449, 7 Am.
Rep. 461; *Cross v. O'Donnell*, 44 N. Y. 661, 4 Am. Rep.
721; *Pierson v. Crooks*, 115 N. Y. 549; *Fountain v. Bush*,
40 Minn. 141, N. W. 465, 12 Am. St. Rep. 722; *Johnson
v. Cuttle*, 105 Mass. 447, 7 Am. Rep. 545; *Jones v. Me-
chanics' Bank*, 29 Md. 287, 96 Am. Dec. 533; *Robinson
& Ledyard v. Pogue & Son*, 86 Ala. 261, 5 South. 685.
Ordinarily the question of acceptance is one of fact for
the jury, upon all the evidence.—*Garfield v. Paris*, 96 U.
S. 563, 24 L. Ed. 821; *Hinchman v. Lincoln*, 124 U. S. 38,
8 Sup. Ct. 369, 31 L. Ed. 337.

Where goods received are not according to the con-
tract, it is the buyer's duty, within a reasonable time, to
notify the vendor of that fact, or he may be considered
as accepting. But the notice to the vendor need not
necessarily point out the defects in the goods, especially
when they may already be known to the vendor.—Benja-
min on Sales (6th Ed.) p. 690, American note, and au-
thorities cited there. The evidence without conflict
showed that a car of 32 piles which did not correspond
with the particular description of the piles ordered by
the defendant were delivered to the Southern Railway
at the point whence the piles were to be shipped on the
22d day of August, 1900, and the car arrived at Mobile
on the 25th of August. On the evidence (which will be
set out in the report of the case) we think the question
of acceptance vel non of the first car of piles was one
for the jury under appropriate instructions by the court.
With respect to the piles which plaintiff's evidence tend-
ed to show were shipped after the first shipment, it can-
not be reasonably said that the plaintiff was entitled to
the affirmative charge. The court erred in giving the

affirmative charge requested by the plaintiff.

The contract stipulates that the piles were to be delivered f. o. b. cars on Southern Railway tracks and were to be paid for as delivered. They were to be shipped to the Southern Railway Company, care of J. D. Elliott, Mobile, Ala. On the trial the question as to whose duty it was to furnish the cars, the buyer's or seller's arose, and the defendant asked the court in writing to instruct the jury that it was the duty of the seller to procure the cars upon which the piles were to be delivered. In the case of *Sheffield Furnace Co. v. Hull Coal & Coke Co.*, 101 Ala. 446, 14 South. 672, this court held that the courts take judicial knowledge of the fact that the letters "f. o. b." cars, as they are used in contracts of sale, mean "free on board" the cars, and that this means free of expense to the buyer. But the precise question now presented has not been definitely determined by this court, although the reason employed in the case last cited would seem to lead to a conclusion in support of defendant's contention that the duty rested upon the plaintiff to procure the cars. Appellant's counsel have cited the cases of *Boyington v. Sweeney*, 77 Wis. 55, 45 N. W. 938, and *Chicago Lumber Co. v. Comstock*, 71 Fed. 477, 18 C. C. A. 207, which hold that it is the duty of the purchaser under such contracts to procure the cars. The Pennsylvania court also seems to have held against the appellant's contention, as may be seen by examining the cases of *Kunkle v. Mitchell*, 56 Pa. 100, *Dwight v. Eckert*, 117 Pa. 508, 12 Atl. 32, and *Hocking v. Hamilton*, 158 Pa. 107, 27 Atl. 836. See, however, *Miller v. Seamon*, 176 Pa. 291, 35 Atl. 134; *Baltimore & L. R. Co. v. Steel Rail Supply Co.*, 123 Fed. 655, 59 C. C. A. 419. The Supreme Court of Wisconsin has repudiated the ruling made in the latter case of *John O'Brien Lumber Co. v. Wilkinson*, 117 Wis. 468, 94 N. W. 337, and in the still later case of *Vogt v. Shienebeck*, 100 N. W. 820, 67 L. R. A. 756. 106 Am. St. Rep. 989. In the case last cited, the court, in an opinion by Marshall, J., after reviewing the former decisions on the subject, reached the conclusion that the letters "f. o. b."

when employed in sale contracts, unless it is otherwise stipulated, by necessary implication impose on the seller the duty of obtaining the cars upon which the shipments are to be made. To the same effect is the ruling in *Cincinnati S. & C. R. Co. v. Consolidated Coal & Min. Co.,* 7 Ohio Law J. 209. It will be discovered from an examination of the opinion of Judge Marshall, that the case of *Sheffield Furnace Co. v. Hull Coal & Coke Co.,* 101 Ala. 446, 14 South. 672, is there extensively and favorably commented upon. In the case at bar the seller undertook to accomplish the delivery of the things sold free on board the cars. We think it comports with reason to hold that by necessary implication he agreed to supply all means to accomplish such results—the cars upon which the shipments of piles were to be made. This ruling is supported, too, by the evidence, which tended to show that the seller did procure the cars that were used, and the lack of any evidence tending to show that he ever applied to the buyer to aid him in getting cars, though the evidence does show that the buyer did proffer his assistance to the seller in his efforts to get cars. We are at the conclusion that the court erred in refusing charge 11 asked by the defendant.

What constitutes a material part of a contract is a question of law for the court. Charges 2, 3, and 4, requested by defendant, were each defective, in that they each referred the question to the jury for determination.

It was open to the jury to find from the evidence that some of the piles were accepted by the defendant. If they were, the plaintiff was entitled to recover their value. Charg 5 pretermitted this proposition, and was for that, if no other, reason properly refused.

There was no evidence that the piles were to be delivered in 10 days from the 13th of August, and charge 6, requested by defendant, for hypothesizing this fact, was properly refused. The defendant sought to make proof of the fact, but was not allowed by the court to do so.

Charge 7 was properly refused. It invaded the province of the jury.

There was evidence from which the jury might have

inferred a waiver on the part of the defendant of time. This was not regarded in charge 8, requested by defendant, and for this reason, if no other, it was properly refused.

If the court erred in sustaining the objection made by the plaintiff to defendant's question to plaintiff, "Did you not swear in that paper [referring to depositions of plaintiff that were taken in the case] at that time that you had about 214 pine piling 10 inches in diameter?" It was error without injury, as the paper (the deposition) was subsequently introduced as a part of the evidence without objection.

The only relevancy the fact that defendant's witness Wooley made a contract with defendant to furnish defendant with poles could have had was with respect to Wooley's interest as a witness. The court erred in allowing the question, "With what percentage of heart in it?" propounded to Wooley. The matter called for was irrelevant.

We think it was both relevant and material to show that the plaintiff stipulated to deliver the piles within 10 days. If he did so subsequent to the execution of the contract in writing, which contained no stipulation as to time, it would be binding on the plaintiff. Parties may modify or add to a written contract by a subsequent parol agreement. The question relating to this matter was leading, but the plaintiff, by making specific objections, must be held to have waived all others. The court erred in sustaining the objections made to the question.—*Robinson v. Bullock.*, 66 Ala. 548.

It was competent to show by the witness H. T. Elliott the circumstances attending the unloading of the car load of piles in Mobile, and in this connection that the railroad company required the piles to be unloaded. Such evidence was relevant and material with respect of acceptances vel non of the car of piles. The question calling for this character of evidence from witness H. T. Elliott was leading, but this objection was waived by the specific objections assigned to the question.

[John v. Dallas County.]

For the errors pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

HARALSON, DOWDELL, and ANDERSON, JJ., concur.